THE OHIO FUEL GAS CO. *v.* CITY OF MT. VERNON.

(Decided November 24, 1930.)

*Messrs. Eagleson & Laylin* and *Mr. W. J. Sperry,* for plaintiff.

*Mr. Robert J. Grossman,* city solicitor, and *Mr. J. C. Marriott,* for defendant.

SHERICK, J.   This is an appeal action from the court of common pleas of Knox county, and the sole question presented is whether or not the demurrer of the city of Mt. Vernon to the Ohio Fuel Gas Company's petition is well taken.

The plaintiff alleges that it is a public utility and as such serves the city with gas; that on August 12, 1929, the city duly enacted a rate ordinance, and thereby offered to enter into a contract with the company granting it certain privileges and determ-

ining the rate for gas for a fixed period of time; that the company pursuant to the requirement of the ordinance accepted in writing on September 21, 1929, which was more than thirty days after the passage of the ordinance; and that thereby a contract was entered into between the parties.

It is further alleged that on September 11, 1929, a document, signed by 457 electors of the city, was filed with the city auditor, purporting to be a petition ordering that this ordinance be submitted to the electorate of the city on November 5, 1929; that between the date of filing and ten days thereafter, 163 of the document signers appeared at the office of the city auditor and withdrew their names therefrom; that the total vote at the last preceding general election in the city was 3,097; and that on September 21, 1929, a further document signed by 54 electors purporting to be a referendum petition was filed with the city auditor, who on September 26 transmitted both documents to the board of deputy state supervisors of elections of Knox county, who caused ballots to be printed and the question submitted to the electorate at the general election thereafter held, the result thereof being a rejection of the ordinance.

It is next averred that for various reasons the submission of the question to the electorate was null and void; that the city now wrongfully repudiates its contractual obligation with the company; and that if plaintiff should now attempt to put its rates into effect it would be subjected to a multiplicity of suits.

The petition further contains this averment: "On the 5th day of October, 1929, plaintiff brought suit as a taxpayer of the said city of Mt. Vernon against

the members of the Board of Deputy State Supervisors of Elections of Knox county, Ohio, and certain officers of the city of Mt. Vernon, to restrain the expenditure of public moneys of said city in the holding of said referendum election, and thereby sought an adjudication of the question as to the validity of said referendum proceedings. Said suit was determined in the Common Pleas Court of Knox county, Ohio, adversely to the claim of the plaintiff in that behalf. Plaintiff duly perfected an appeal to the Court of Appeals for Knox county, Ohio, wherein said suit was dismissed on the 18th day of February, 1930, but without passing upon the questions involved in this action.''

The company further pleads its willingness to fully perform the contract, and asks that the city be enjoined from interfering in any way with the plaintiff's putting into effect the rates and charges stipulated by the ordinance. The demurrer questions the sufficiency of the petition, in that it does not state a cause of action or entitle the plaintiff to the relief prayed for.

It is apparent that the question thereby presented to this court for determination is whether or not the prior suit by the plaintiff as a taxpayer is a bar to the prosecution of the present action. In other words, it is now asserted by the city that the petition on its face shows that the question now sought to be litigated was adjudicated in the taxpayer's suit, and that the question in issue, the validity of the referendum, in both cases, is now *res judicata*.

It is made to appear by the plaintiff's brief that the relief prayed for in the taxpayer's suit was denied in the trial court immediately before the elec-

tion; that the election was held before the case could be heard in the Court of Appeals, and that the court "found from the petition and the agreed statement of counsel that the question raised in the petition as to the expenditure of public money, and to prevent which was sought to be permanently enjoined, has become moot," and, therefore, without passing upon other possible questions that may have been in issue, the court found that the appeal was not well taken, and it was "ordered and decreed that the appeal be dismissed at the costs of the appellant," to all of which the appellant objected and excepted.

It is first contended by the plaintiff that the dismissal of the appeal in the taxpayer's suit, because of the moot character of the question, and the impossibility of granting the relief prayed for in the petition, does not leave the judgment below in force in the same manner as would have been the case had the appeal been voluntarily dismissed or dismissed for want of jurisdiction, or abandoned and dismissed for want of prosecution. And it is asserted that the effect of *res judicata* does not attach to a decree so properly appealed from when the appeal is dimissed under the peculiar circumstances attending the dismissal of the former appeal by this court. And it is insisted that this court having taken jurisdiction and dismissed the appeal by reason of the fact that the question was then moot, this court intended to preserve, and should have preserved and not foreclosed, the question sought to be litigated in this case, and should have saved the rights of the company from the effect of the dismissal of the appeal. And it is lastly asserted that the perfecting of the

appeal vacated the judgment of the trial court and hence the doctrine of *res judicata* could not apply.

We recognize the unquestioned right of the plaintiff as a taxpayer, under and by virtue of Sections 4311 and 4314 of the General Code, to institute the action and to enjoin the misapplication of funds of the corporation, and to that end it might rightfully question the validity of the referendum upon the ordinance, and from a decision adverse to it therein it may appeal. But in the event that the thing sought to be restrained, as in this case the misapplication of public funds, has already been accomplished, and there remains no debatable question or relief prayed for concerning which a court could make an order susceptible of enforcement, we must admit our inability to understand by what authority we could make any other order than was entered in this case.

The statutes referred to distinctly specify in what instances a taxpayer may bring a suit, and we do not find therein that it is permissible for a taxpayer to maintain an action for the sole purpose of questioning the legality of a referendum election, which was all of the plaintiff's suit that then remained. The validity of the election was in truth subservient to but decisive of the question of misapplication of funds, and this having been eliminated nothing remained for the court to do except dismiss the appeal.

Even if this court might have saved the question, had it the power so to do, in the absence of a motion to amend or for a substitution of parties, if such was permissible, we do not deem it to be within the province of the court to make suggestion as to how the action might be preserved or carried forward.

We do note, however, that an exception was taken to the action of the court, but error was not prosecuted therefrom.

The fact that the trial court passed upon the matter upon the eve of election can have no bearing upon the action of this court in dismissing the appeal, in view of the fact that fraud or collusion is not charged in the petition in that suit or in the instant action.

Now this court entertains the view that the plaintiff had two alternative, but not inconsistent, remedies, as is exemplified in the two respective petitions in question. The company elected to proceed as a taxpayer, and by so doing it would thereby protect the public treasury, and, incidentally, thereby secure to itself an advantage not in common with all other taxpayers, in that the referendum being found null and void, its contract would have then been unimpaired, and in addition thereto it might save itself considerable expense, in that, if it had been successful, the court by virtue of Section 4316 of the Code might have allowed the plaintiff its costs and attorney fees. This no doubt prompted the plaintiff in its choice of remedies, but it must now be held to have had in mind that a citizen has no vested right as to the precise time in which his case shall be heard and determined.

And it further appeals to this court that had the plaintiff been successful in the taxpayer's action, and the defendants therein had appealed, it would not now be heard to say that this court should have saved the servient question.

The presumption prevails that the trial court rightly determined the issues in the taxpayer's suit, and this court had no right or authority to disturb

its findings in view of the situation that confronted it.

It is urged that the bringing of the appeal in the prior suit, and this court's order therein, vacated the judgment below. We do not subscribe to this view, for it is the law, as we understand it, that the perfecting of an appeal suspends the judgment, but does not vacate it. Examination of Section 12234 of the Code discloses that, "A judgment shall be suspended whenever an appeal therefrom is perfected." We think well of the reasoning of the court in *Stewart* v. *O'Neal,* 14 O. L. R., 553, 566, 150 C. C. A., 547, 237 F., 897, 906, wherein it is said:

"Now 'vacate' and 'suspend' are not synonymous. Vacate means to annul, set aside, or render void; suspend, to stay. When a thing is vacated it is devitalized. It is not when suspended. It may be suspended, and yet retain its vitality."

We are appreciative of the fact that these terms have been used synonymously. Under prior statutes the word "vacated" was used, and we believe that it has been thereafter inadvertently used. It is the effect of the judgment that is vacated, and which puts an end to all proceedings by way of execution or otherwise on the judgment, but the judgment itself is not vacated, but placed in suspension; and the dismissal of the appeal in the taxpayer's suit ended the suspension of that judgment in view of the fact that this court made no finding on the merits therein, but only dismissed the appeal. And the suspension being lifted, the judgment of the trial court at once became operative.

This question is no longer a debatable one in this state. The recent holding of the court in *Union*

*Trust Co.* v. *Lessovitz,* 122 Ohio St., 406, at page 416, 171 N. E., 849, 852, is decisive; therein it is held:

"When a case is appealed to the appellate court, the judgment of the trial court is not vacated, but suspended."

In this case the earlier pronouncements of the Supreme Court are reviewed, and it is aptly said:

"Manifestly this is the better view; for, were we to construe the appeal as vacating or annulling the judgment below, the concurrent remedies of error and appeal could not be employed; for, if the appeal vacated the judgment, error would not lie, since no judgment would then exist upon which to base an error proceeding."

It is further maintained by the plaintiff that if the judgment in the taxpayer's suit is now in full force and effect, such cannot be *res judicata* of the question now presented, by reason of the fact that the two cases have in common but one element, that is, the validity of the referendum election, or identity of subject-matter; and there being a lack of identity of the causes of action, and of the persons and parties, and in the quality of the persons for or against whom the claim is made, the prior judgment cannot work an estoppel. And as a general proposition of law it must be admitted that the plaintiff's assertion is sound.

However, in the situation now developed, we are not of opinion that the general rule must control. It must be remembered that the plaintiff was not only a taxpayer, but also one of the contracting parties, and that it brought the action after the city solicitor refused to institute it against certain officials of the city, who were represented and defended by the so-

licitor in that suit; and it must be remembered that under the statute previously referred to the city might have been made to pay the costs and attorney fees of the plaintiff.

It is claimed that the city was a stranger, or at least a neutral, to the prior suit, and of this we are not convinced. It is the rule that a taxpayer in a taxpayer's suit represents a class, that is, all other taxpayers, and that the city is the representative of the taxpayers as a whole. This being true, on the plaintiff's side of the case, and in view of the fact that the city might have been made to pay for its neutrality, we conclude that the city was at least nominally interested, if not actually so, as a plaintiff, if that were possible.

On the other hand, considered from the defendant's side of the case, certain officers of the city are made parties, whom the city refuses to sue, but whom the city permits to be defended by its solicitor, of all which the city must have had full knowledge.

Would the city have been bound by the judgment in the prior suit had it been decided adversely to its officers? We think it would. The city was interested in the action as the representative of its citizens, and as a contracting party, as was said in *Lyman* v. *Faris,* 53 Iowa, 498, 5 N. W., 621, 623: "It will not do to allow parties in interest to fight their legal battles over the shoulders of a public officer and then claim that the judgments are not binding upon them because they were not parties nor privies." We believe this statement to be sound, and if a city is bound in a suit decided adversely against its officers, and in which it is interested,

surely it is equally bound if the suit is decided in favor of its officers.

If an action is brought against a city official at the instance of a taxpayer, it must be regarded as though the city were the nominal as well as the real party in interest, and the decision ultimately reached is as binding upon it as *res judicata* as if the action had been brought by and the judgment rendered against it directly. This principle is recognized in 19 Ruling Case Law, page 1058, Section 346, wherein it is said:

"It is frequently necessary to bring proceedings which involve the determination of the validity or effect of certain actions of a municipal corporation against one of its officers rather than against the corporation itself, and it is well settled that when a judgment is rendered against an officer of a municipal corporation who is sued in his official capacity, the judgment is binding upon the corporation."

To the same effect, see the note and cases therein cited in 105 Am. St. Rep., 211.

Our attention has been called to Freeman on Judgments as authority for the position taken by the plaintiff that the causes of action are not the same. A careful and extended examination thereof convinces us that that authority must further confound the plaintiff. It is therein announced, volume 2 (5th Ed.), Section 684, that:

"A party cannot by varying the form of action or adopting a different method of presenting his case escape the operation of the principle that one and the same causes of action shall not be twice litigated. Where either of two remedies is equally available to vindicate the same right, the judgment in an

action employing one of them will bar a resort to the other.''

It is further the rule that the best and most invariable test as to whether two actions are to be considered as one and the same is to ascertain if the same evidence would sustain both, and, if such be true, the former judgment is a bar to the subsequent action, although the actions are different in form. See 15 Ruling Case Law, pages 964 and 965, Section 439; also, 2 Freeman on Judgments, Section 687.

And once again recalling that the plaintiff taxpayer was also a contracting party, and that it elected to first pursue its alternative but not inconsistent remedy to final judgment, we come to the conclusion that it is now estopped by virtue of the former judgment, whether it be upon the principle of estoppel or *res judicata*. And once more turning to 2 Freeman on Judgments, Section 631, wherein that authority considers the question of estoppel, we find the following language:

''The general principle [estoppel] here involved, while akin to, must, of course, be distinguished from the doctrine of *res judicata,* since it is not governed by the same limitations, such as identity of parties and mutuality. Both doctrines may, however, be applied in the same case; in other words, a previous action litigated to a final judgment may constitute an election and the judgment may also be *res judicata.''*

We believe that we now find the parties in exactly this situation, and whether it be termed estoppel or *res judicata,* or both, the plaintiff is now barred and concluded by the adverse judgment against it, and

the demurrer must therefore, of necessity, be sustained.

*Demurrer sustained.*

LEMERT, P. J., and CROW, J. (of the Third Appellate District, sitting by designation), concur.