POWE *v.* POWE.

(No. 95754—Decided
October 19, 1987.)

Court of Common Pleas of
Cuyahoga County, Division of
Domestic Relations.

*Neal P. Lavelle,* for plaintiff.
*James R. Skirbunt,* for defendant.

WELLS, J. Simply stated, the issue is whether plaintiff, Judith Powe, the custodial parent, shall be permitted to remove Kenny, the parties' son, to Florida. Defendant, Kenneth Powe, objects to his son's removal, and a prior agreed-to order prohibits removal absent consent or court order. The agreed pattern and practice of the parties developed as the child grew, so that Kenny's time became almost evenly divided between his parents, including substantial time with his father each week. Defendant does not seek custody of his son. The interest he seeks to protect is the relationship which he and his son have developed, and the frequent, ongoing contact as integral to that relationship.

Background

Kenny was born on March 7, 1977. His parents separated in October 1978 when he was eighteen months old. Plaintiff was granted an uncontested divorce in February 1979 on grounds of defendant's gross neglect of duty. Consistent with the parties' separation agreement, incorporated into the divorce decree, plaintiff was granted custody and defendant reasonable visitation with weekly specification.

On August 7, 1982 defendant remarried. He and his wife have a young son, Joey, who is Kenny's half-brother. On May 9, 1983, plaintiff married Timothy Fitch. Mr. Fitch is the father of three children in the custody of his first wife.

On June 14, 1983, defendant filed a motion to modify custody and, on August 1, 1983, a motion to determine visitation rights. The parties reached an agreement on March 8, 1984 and on April 13, 1984 Judge Whiting entered an agreed-to judgment in partial resolution of the parties' dispute. The order expanded specified visitation rights and prohibited the child's removal absent agreement or court order. On September 10, 1984, the court by order resolved the remaining visitation issues. On September 13, 1984, defendant withdrew his motion to modify custody.

Central to the present dispute is the parties' 1984 expanded visitation and nonremoval agreement, ordered into effect by the court. Entered in resolution of visitation and custody issues, it included a specific provision: "Neither party shall remove the child from Cuyahoga County, Ohio, or con-

tiguous counties without the written consent of the other, or order of this Court, vacations excepted." The order also provided visitation rights on alternate weekends, four weeks during summer, alternate national holidays and birthdays, one half of Christmas vacation and "all other visitation as mutually agreed to by the parties." The court ordered further visitation rights on Christmas Eve and alternate "Easter" school vacations.

Plaintiff permitted and defendant exercised expanded visitation privileges and eventually Kenny was dividing his time almost equally between his parents' households.

On January 5, 1986, plaintiff's husband moved to Florida.

On April 7, 1986, plaintiff sought court permission to remove Kenny to Florida and modification of defendant's visitation rights.

Defendant resisted the removal of Kenny, modification of his visitation rights and requested attorney fees. He obtained a temporary order, restraining plaintiff from removing the child.[1]

The matter came on for oral argument before this court on June 17, 1987. The parties waived any procedural irregularities, and the facts are not in dispute. The court reviewed the referee's hearing transcript, briefs, family conciliation reports and the file. Jurisdiction and venue are proper. The fact of Kenny's removal on the now expired interim order does not moot the matter.

The child's removal to Florida is inconsistent with defendant's visitation rights as set forth in the parties'

1984 agreed-to court order and as developed by further agreement and practice of the parties. Defendant, therefore, seeks a court order denying plaintiff, the custodial parent, permission to remove their minor son to Florida and attendant modification of his visitation rights.

The following options are available to the court. Plaintiff may be prohibited from removing Kenny, custody may be changed to defendant, or the order may be modified to permit plaintiff's removal of the child. *Hauck* v. *Hauck* (Mar. 31, 1983), Cuyahoga App. No. 44908, unreported, at 3-4; R.C. 3109.04; 3109.05(B).

The referee recommended permitting the removal. He ordered that defendant's visitation rights be conditioned on two weeks' notice to plaintiff, in the community where the child resides, during the first weekend of each month and alternate holidays, plus a week away for any scheduled Christmas or Easter vacation plus six continuous summer weeks on thirty days' notice to plaintiff. No provision was made for expenses of travel.

### Referee's Report

The referee's report, filed July 15, 1986, does not contain sufficient findings to permit the court to independently analyze the merits of plaintiff's motions and defendant's responses. Review of the full hearing transcript was necessary. Sufficient evidence was adduced at the referee's hearing to support application of law and to issue orders.

---

[1] On July 16, 1986, Judge Flanagan entered a Civ. R. 53 interim order which adopted the referee's recommendation and permitted plaintiff to move to Florida with Kenny, then nine years old. Judge Flanagan's final order was vacated on September 30, 1986, leaving defendant's objec-

tions pending. The case was reassigned in 1987. Extensions were granted, and defendant's reply brief was filed on February 11, 1987. The interim order having expired, a hearing was set on defendant's objections to the referee's report.

### Defendant's Objections to Referee's Report

Defendant challenges, as against the manifest weight of the evidence, the referee's findings regarding the best interest of the child. This challenge is well-taken.

The referee made two general findings regarding the child's best interest. "It is in his best interest to remain with his mother where he receives the love and care of his mother and his stepfather." This conclusory statement of sentiment is not determinative. "It would be in the child's best interest to remain with his mother who has been his prime custodian since birth and for him to remain with his mother when she moves to the State of Florida with her new husband." The familiar form is beguiling. However, although plaintiff has been Kenny's custodian since his parents divorced, at the time his mother petitioned the court to remove Kenny to Florida, the boy's time was almost evenly divided between his parents' households and he enjoyed "an unusually close" relationship with each parent. The referee's "findings" beg the question and are not supported by the evidence. Reiteration of catchwords is inadequate to support the recommended order granting removal. *Nolte* v. *Nolte* (1978), 60 Ohio App. 2d 227, 14 O.O. 3d 215, 396 N.E. 2d 807.

The 1984 agreed-to visitation order cannot be swept aside lightly on the custodial parent's application. To do so makes such orders vain acts. The parties here agreed to resolve post-decree custody and visitation rights issues. The non-removal order was not compelled by an independent fact-finder. Defendant bargained for and secured plaintiff's consent to a provision which ensured frequency of contact with his son, subject to his later relinquishment or a court order altering the 1984 agreed-to order. Plaintiff agreed to the order even though she had considered a move to Florida a possibility since before her marriage to Mr. Fitch and "knew that at some point, I wanted to live in Florida." The agreed-to order constitutes a condition upon plaintiff's custodial authority to make parental decisions.

In addition, defendant challenges, as against the manifest weight of the evidence, the referee's finding that removal would not disrupt or damage the relationship between defendant and his son. Although the assertion raises parental rights issues, since this finding is also an ingredient of determining the child's best interest, it will be discussed as part of the analysis of Kenny's best interest. R.C. 3109.04 (C)(3).

The referee's finding that defendant has failed to demonstrate that the move of plaintiff will result in anything other than an increase in travel costs and longer transit time to exercise his visitation rights is not supported by the evidence. This "finding," a simple reiteration of syllabus language from a Lake County case, obliterates evidence here of the quality and force of this child's frequent contact with his non-custodial parent. See *Schwartz* v. *Schwartz* (1982), 8 Ohio App. 3d 311, 8 OBR 419, 456 N.E. 2d 1272.

Although the referee reported it was "essential" that Kenny "maintain visitation schedule even from Florida with his dad," defendant correctly asserts the referee failed to enter findings or recommendations regarding the parties' responsibilities for increased travel expenses necessarily generated by the removal he recommended.

Defendant challenges as error the referee's application of the burden of proof regarding Kenny's best interest. Defendant properly relies on the 1983 *Hauck* case which confirms that the best interest of the child is the "para-

mount consideration" and which states "the burden of proof is upon the party seeking modification." *Hauck, supra,* at 3.

Plaintiff seeks modification of the 1984 order by deleting the restriction on removal of the child and changing defendant's visitation rights from frequent weekday and weekend contact to a long-distance visitation schedule which will accommodate her move to Florida. Plaintiff, therefore, has the burden to demonstrate affirmatively, by a preponderance of the evidence, that removal is in Kenny's best interest. *Id.* Defendant asserts that by failing to require plaintiff to so demonstrate, the referee implicitly misplaced the burden on defendant to prove removal would not be in Kenny's best interest.

### Plaintiff's Response to Defendant's Objections

Plaintiff argues the 1984 court order (*"Powe* order") does not expressly or by implication prohibit removal. Unless the parties consent in writing or procure a court order, the prohibition is express: "[N]either [party] shall remove the child."

In addition, the *Powe* visitation order and the parties' visitation practices are inconsistent with Kenny's removal to Florida. Kenny's visitation with his father was not simply frequent; the boy's time was almost evenly divided between his parents. The *Powe* 1984 visitation order impliedly prohibits removal. *Hauck* at 4.

Plaintiff and the referee rely on two distinct *"Schwartz"* cases regarding removal. The 1964 Cuyahoga County case, grounded on the now abandoned "tender years doctrine," invoked the defendant's pre-decree wrongful conduct, extreme cruelty, for which his wife was granted a divorce, as a reason to permit the child's removal by her mother. The case is distinguishable in several respects.

There was no provision, as here, by agreement or court order, regarding removal of the Schwartz child. *Schwartz* v. *Schwartz* (1964), 1 Ohio App. 2d 451, 455, 30 O.O. 2d 447, 449, 202 N.E. 2d 432, 434. The *Powe* order was entered five and one-half years after the parties' divorce, and it was agreed to by them. That their original divorce was granted, uncontested, consistent with terms of their submitted separation agreement, on the grounds of defendant's gross neglect of duty (not extreme cruelty) is not determinative of the instant proceedings. Moreover, if defendant's pre-decree conduct was relevant to removal, plaintiff should have raised the issue in 1984. To permit her to reach behind her 1984 agreement to pre-decree conduct and thereby invalidate the 1984 court order is irrational and inequitable.

In the 1982 *Schwartz* case, Lake County, the original decree required the custodial parent to live within eighty miles of the marital residence. *Schwartz, supra.* Plaintiff is under no order prohibiting her move. The *Powe* order does not put directly at issue plaintiff's constitutional right to travel. *Shapiro* v. *Thompson* (1969), 394 U.S. 618, 629. Obviously, however, a custodial parent is constrained in his or her efforts to relocate if a court does not lift a non-removal order. Therefore, the circumstances surrounding plaintiff's proposed move are relevant.

Plaintiff's husband moved to Florida January 5, 1986, before plaintiff requested the court to lift the non-removal order and modify defendant's visitation rights. Although Mr. Fitch testified he was not planning to return to Ohio, plaintiff advised Dr. Huntsman (the evaluating psychologist) that if the court denied her motion to remove Kenny, she would stay in Cleveland and her husband would return.

Plaintiff was employed as a

teacher in Cleveland, certified in English, speech and reading. She has been the primary wage earner since her marriage to Mr. Fitch. She earned $22,989 in 1986-1987 and was not laid off. She expressed confidence she could obtain a teaching position in Florida and had a temporary Florida certificate. However, she had no offer of employment in Florida at the time of the referee's hearing. Plaintiff's employment situation does not compel a move to Florida.

Plaintiff's husband, unemployed when she married him in 1983, obtained work as a boilermaker in the Cleveland area but had periodic lay-offs, as had previously happened to him in Florida. He is also an experienced carpenter. He testified he did not look for work as a carpenter in Cleveland, nor did he look for any work in surrounding areas such as Lorain or Pittsburgh since he did not want to live there. He has wanted to live in Florida since "way before" he knew plaintiff. Mr. Fitch obtained a construction position in Florida, using his carpentry, boilermaker and other skills. The position is fulltime, and he believes construction work will continue to be available.

The move to Florida, while not simply voluntary, cannot be characterized as necessary. Plaintiff has not demonstrated significant economic necessity.

Defendant cannot move to Florida without significant economic jeopardy to his family. He is employed by the United States Postal Service as a letter carrier. He is the sole wage earner for his family and earned $26,000 in 1985.

Both families include the minor child, Kenny. Issues of custodial autonomy and parental rights are important. But as the Wisconsin Supreme Court observed: "A divorced man or woman is free to move about and pursue his or her life and living without restraint from his [or her] former spouse; as divorced parents of minor children they may be required to curtail these liberties or forfeit some of their rights to custody or visitation, as the case may be, consistent with the best interests of the children and the rights of the other parent." *Whitman v. Whitman* (1965), 28 Wis. 2d 50, 58, 135 N.W. 2d 835, 839.

On the facts of this case, in the face of the parties' agreement, court order and practice, Kenny's best interest must control.

### Best Interest of the Child

The wishes of the child's parents regarding his custody are clear. Plaintiff is custodian and defendant does not seek custody. R.C. 3109.04(C)(1). The child is not yet eleven years old. R.C. 3109.04(C)(2).

Kenny is well-adjusted to each parent's home, to school and to his community. Plaintiff testified on direct examination that living conditions in Florida were comparable and there would be neither increase nor decrease in the quality of life for Kenny if he moved. There is no dispute the child receives good care from his parents. Each is fit. R.C. 3109.04(C)(4). The parents have had some difficulty communicating with each other which has involved directly the minor child. The mental and physical health of all persons involved is good. R.C. 3109.04 (C)(5).

Analysis follows of the child's interaction and interrelationship with persons who significantly affect his interest and other relevant factors. R.C. 3109.04(C)(3).

Kenny's interaction and interrelationship with his parents is solid, very close and well-established. They are the people who most significantly affect his best interest. There is no evidence of difficulty in his relationship with his stepparents, his stepsiblings and his half-brother. He has a close

relationship with Jean, his stepmother, and Joey, his half-brother. He has a good relationship with his stepfather. There is evidence that Kenny's relationship with his non-custodial parent, defendant, is a "remarkably close relationship." "It's exceptionally close for dad, I think, because of the quality of Mr. Powe's parenting. He really devotes time to Kenny, rather than passing over that responsibility to someone else and Kenny really relies on that."

Asked if Kenny was emotionally mature for his age, Dr. Huntsman replied: "Kind of amazingly so, yes * * * neither parent without the other one could have brought this about."

For Kenny and defendant, frequency of access is a fundamental ingredient of their relationship. Dr. Huntsman testified Kenny considered moving to Florida with his mom and visiting his dad. "[H]e would say that he didn't think that would be enough because he sees his dad so frequently, he's really worried about not being able to see dad so often."

At the time of the referee's interview, June 19, 1986, Kenny was nine years old, not of age to elect. R.C. 3109.04(A). He had been examined, evaluated and found to be bright and emotionally mature for his age. While his preferences are not controlling, there is no basis in the record for ignoring them completely. They bear witness to the significance of this child's relationship to his non-custodial parent and his need for continuing contact, support and guidance from both his parents.

The referee's interview with Kenny opened with the inquiry of whether the boy knew the general reason he was in court. "For me to stay here," Kenny replied. Asked if he wanted to stay with his mom, Kenny answered: "No. I want to stay here with my dad and stuff." The referee asked: "You would rather stay with your dad?" The boy replied, "No, I want everybody to be here."

In spite of evidence plaintiff would remain in Cleveland if plaintiff's motion were denied, the referee then flatly declared: "They can't be here," to which the boy replied, "They can't?" "No," said the referee.

The referee then delivered a lengthy explanation of his position to Kenny. The child consistently answered only "yes" to the referee's queries, most of which were a form of "Do you understand?" Nonetheless, the child reiterated his position when the opportunity arose.

At the end of the interview, the referee asked Kenny: "So, what is it you really want if you know they don't have to stay in the same town. Where would you want to be? Do you want to stay with your mom?" Kenny answered: "I want to see my Dad a lot and I don't want to move to Florida at all without my Dad."

Asked if there was anything else he wanted to say, Kenny answered: "Oh, yes. I told Dr. Huntsman the same thing when I went to visit her and my mom made up a list of all the good things in Florida and all the bad things about not going." "Did Dr. Huntsman tell you this?" "* * * I said one bad thing is missing my dad and my brother and Jean [stepmother] and * * * [t]he three bad things about missing everybody would make all these good things not fun, not as fun." The referee asked: "Even though there are all those good things in Florida, they still aren't as good as the bad things of leaving your family here?" "Yes," answered Kenny.

None of the referee's findings accurately reflects his interview with this minor child.

Plaintiff called Dr. Huntsman who had evaluated the families regarding custody and visitation in 1983 and regarding plaintiff's request to remove Kenny and alter defendant's visitation

rights. Dr. Huntsman testified: "My simple recommendation is that at this point, just for Kenny and disregarding everything else. * * * [J]ust only looking at the relationship, I would like it best for Kenny if everybody lived in the same community." Regarding plaintiff's statement that she would stay in Cleveland, Dr. Huntsman said: "That's what she told me; but more importantly, that is also what Kenny deserves."

The referee twice emphasized that Dr. Huntsman testified that defendant, by "lodging his protest," "had made things difficult and detrimental to Kenneth." This characterization undermines the legitimacy of defendant's seeking protection of a prior court order and is misleading regarding Huntsman's testimony. Dr. Huntsman discussed each parent's conduct in context. Asked if defendant's conduct in response to plaintiff's motion to remove had been detrimental to Kenny, she testified: "* * * [I]t's hard to say, flat out, its being detrimental."

On cross-examination, Dr. Huntsman was asked: "And if Kenny doesn't maintain the degree of access and quality relationship that he now currently enjoys with his father, would that not also constitute a significant loss to him?" "Yes," she answered. Asked by the referee if the only difference would be the frequency of contact that the child would have, "personally, with the parent he's left behind [sic]," Dr. Huntsman replied: "* * * [T]he principal difference is the frequency of access and I think it's a big difference."

Plaintiff has failed to demonstrate that removal is in Kenny's best interest. Therefore, the child must be returned to the jurisdiction or contiguous counties. Defendant has failed to introduce evidence in support of his fee application.

It is therefore ordered that:

1. Plaintiff's motion to remove the minor child to Florida is denied.

2. Defendant's motion for attorney fees is denied.

3. Plaintiff shall return the minor child, Kenneth R. Powe, to Cleveland on the day following completion of the school semester in which he is currently enrolled. She shall forthwith notify defendant in writing of the date on which the current school semester ends. Plaintiff shall bear the expenses of Kenny's return to Cleveland and shall notify defendant in writing of the child's travel arrangements at least ten days in advance of his return.

4. Upon Kenny's return to Cleveland, defendant's visitation rights shall be as set forth in prior orders. Prior to Kenny's return, defendant shall have visitation rights as follows: at defendant's sole expense, winter school vacation beginning the day after school recesses until the day before school resumes. On or before November 15, 1987, plaintiff shall notify defendant in writing of vacation dates. On or before December 1, 1987, defendant shall notify plaintiff in writing of arrangements for Kenny's transportation to and from Cleveland. Defendant is responsible for costs of Kenny's travel for winter school vacation.

5. Child and absent parent shall be allowed one private telephone conversation per day at caller's expense. Neither parent shall interfere with the child's receipt of mail from the other.

6. If plaintiff elects not to return to live in the Cleveland area when Kenny returns per order No. 3 above, she shall notify defendant in writing of such election thirty days in advance of the date of Kenny's return and shall file such election in duplicate with the court. Upon receipt of such notice by the court, and application by either party, hearing will be set to determine appropriate parental responsibilities under the circumstances. Pending such

hearing the child shall reside with defendant.

7. Each party to pay expenses of this action, including fees, as separately incurred.

8. All prior orders not modified herein to remain in full force and effect.

*Judgment accordingly.*