**ROZBORSKI, Appellant,**

v.

**ROZBORSKI, Appellee.**

[Cite as *Rozborski v. Rozborski* (1996), 116 Ohio App.3d 29.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68272.

Decided Dec. 2, 1996.

*Alice Rickel & Associates, Alice Rickel* and *Linda B. Schuster,* for appellant.
*L. Gordon Moser,* for appellee.

KARPINSKI, Judge.

Plaintiff-appellant, Nancy Rozborski, appeals the trial court's decision approving the referee's report and thus denying her motion to relocate the minor children. For the following reasons, we affirm this decision.

Plaintiff and defendant-appellee, John Rozborski, were married in 1985. Two children were born during this marriage: Michael John, d.o.b. March 1, 1987, and Thomas John, d.o.b. October 5, 1988. The parties were granted a divorce in June 1992. As part of the separation agreement, the parties entered into a shared parenting program whereby neither parent would relocate the children from Cuyahoga County without either the other parent's permission or a court order.

Plaintiff worked for Westinghouse Corporation in Cuyahoga County for nearly ten years. Defendant is self-employed as a jewelry salesman.

In February 1993, plaintiff filed a motion to terminate shared parenting, which motion was granted pursuant to an agreed judgment entry. According to this agreement, plaintiff was granted legal and residential custody of the two children. The agreement also contained a residency restriction as follows:

"The parties further agree that plaintiff shall not change the permanent residence of the minor children from Cuyahoga County without first obtaining the written consent of Defendant or without first obtaining an Order of Court of competent jurisdiction."

After pursuing a job opportunity with Westinghouse in Pittsburgh, plaintiff, on May 4, 1994, was offered a position in Pittsburgh, which she accepted one day later. Plaintiff did not attempt to explore other job opportunities in Cuyahoga County. On May 9, 1994, plaintiff filed an emergency motion to relocate and notice of intent to relocate. Defendant filed a motion in opposition to motion to

relocate, along with a motion for psychological evaluation of the parties and minor children.

Appellant has testified that her employment in Pittsburgh began on July 5, 1994, and that her former position with Westinghouse in Cleveland has been terminated.

Pursuant to defendant's motion, the children and parents were examined by Dr. Mark Lovinger, a clinical psychologist familiar with the family because he previously performed the custody evaluation at the time of the divorce. Both parties stipulated that Dr. Lovinger would testify as an expert on this matter. Dr. Lovinger concluded that it was in the best interest of the two children to have them stay in Cuyahoga County.

A hearing was held in front of a referee, after which the referee issued a report recommending that plaintiff's motion to relocate be denied. Plaintiff filed objections to the report. The trial court, in an order dated November 16, 1994, overruled the objections to the referee's report and adopted it, thus denying plaintiff's motion to relocate. On December 15, 1994, plaintiff timely appealed to this court and raised the following assignments of error:

"I. The trial court abused its discretion when it denied appellant's emergency motion to relocate from the state of Ohio to the state of Pennsylvania with the parties' minor children."

■■■■ Whether a motion to relocate will be granted turns on whether the relocation is in the best interest of the children.[1] *Powe v. Powe* (1987), 38 Ohio Misc.2d 5, 525 N.E.2d 845. The Ohio legislature has set forth the factors that determine the best interest of the child. R.C. 3109.04. This court has stated that the moving party bears the burden of establishing whether the requested relocation is in the best interest of the child. *Hauck v. Hauck* (Mar. 31, 1983), Cuyahoga App. No. 44908, unreported, 1983 WL 5881.

■■■ A review of the evidence presented reveals that plaintiff has failed to satisfy her burden of proof. When plaintiff agreed to terminate shared parenting, plaintiff specifically agreed not to relocate the children without consent of the other parent or a court order. Defendant testified that he agreed to the plan only because of the relocation restriction. Moreover, the referee was persuaded by the testimony of Dr. Lovinger, a clinical psychologist, who stated that the relocation of the children was not in their best interest. The referee stated as follows:

---

1. Both parties agree on this point.

■■■■■■■■■■■

"Lovinger points out several reasons to focus on avoiding the children's move. He finds staying in Cleveland clearly the better choice. The primary reason for his opinion is the accessibility of day to day contact with people who are significant to the children in a variety of situations. To move them would affect their relationships here (the father, Brenda, their half brother) all of which are positive as far as is known. The father has played a significant roll in the boys' activities, attends all of their games, probably half of their practices, and has even pitched in from time to time assisting the soccer coach. He works a moderately flexible schedule as a self-employed jewelry salesman and adjusts it primarily around the boys. Unchallenged testimony established that the boys share an excellent relationship with Brenda and her son Todd and truly love the time they spend with their half brother.

"Lovinger expressed serious reservations about the way Plaintiff approached the Pittsburgh promotion without involving Defendant in discussions until essentially after she'd made her decision. Knowing she had to decide quickly, he still believes it would have been better to at least make the attempt to communicate. * * * He found problematic the fact that Plaintiff only began exploring jobs locally after realizing there was to be a fight. His problem with Plaintiff's approach to her career advancement opportunity is that he found it reflective of a larger issue affecting the children. 'It's not just a mistake.' 'It shows a certain degree of unawareness of the impact that this kind of process has on children.'

"Over and over, in compelling testimony, Dr. Lovinger underscored fear of disrupting what is clearly working well for the children."

Plaintiff has failed to present any evidence to rebut this expert's conclusion, let alone satisfy her burden to prove affirmatively that it is in the best interest of the children to relocate them. Plaintiff's first assignment of error is overruled.

"II. The trial court's decision violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution."

Plaintiff claims that the lower court exhibited a gender bias in making its decision. There is no evidence to support plaintiff's equal protection argument. The detailed referee's report, which was adopted by the trial court, centered specifically on the best interest of the children. Plaintiff has failed to point to any evidence of gender bias and failed to raise this issue below. This assignment of error is overruled.

"III. The trial court's refusal to permit appellant to move out of state with her children was an unconstitutional infringement upon her freedom to travel and live where she chooses."

Plaintiff argues that the trial court's denial of her motion to relocate constitutes an unconstitutional infringement on her right to travel. This argument is without merit. Plaintiff was never ordered to stay in this county. On the contrary, plaintiff agreed to stay here as part of the shared parenting plan.

This court has previously held that a shared parenting order concerns the residence and visitation of the child and does not prohibit either party from travelling. *Marsala v. Marsala* (July 6, 1995), Cuyahoga App. No. 67301, unreported, at 6, 1995 WL 396360; *Hunter v. Hunter* (Aug. 12, 1992), Madison App. Nos. CA91–10–031 and CA91–11–034, unreported, at 8, 1992 WL 193688. The case cited by plaintiff, *Smeltzer v. Smeltzer* (Nov. 24, 1993), Columbiana App. No. 92–C–50, unreported, 1993 WL 488235, is inapplicable because that case involved a court-ordered residency restriction. Therefore, plaintiff's third assignment of error is overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., concurs.

HARPER, J., concurs separately.

SARA J. HARPER, Judge, concurring.

I reluctantly agree with the decision to affirm the trial court's ruling which approved the referee's report and thus denied appellant's motion to relocate the minor children. I am compelled to write separately to address the fact that had appellant argued and substantiated her allegations in the lower court, then this court would have had the opportunity to properly review the interesting substantive issues appellant raised in her appeal. Further, a review of the substantive merits of appellant's arguments ultimately could have influenced this court's determination.

Before turning to my analysis of appellant's arguments, it is necessary to set forth the standard of review utilized by the court when reviewing decisions from domestic relations courts.

It is a seminal point of law that, upon review, judgments of the lower court are presumed valid unless error affirmatively appears on the face of the record. *Makranczy v. Gelfand* (1924), 109 Ohio St. 325, 142 N.E. 688. A trial court is further presumed to have rightly determined issues, *Ohio Fuel Gas v. Mt. Vernon* (1930), 37 Ohio App. 159, 174 N.E. 260, to have found all things necessary to support judgment, *Judy v. Trollinger* (1924), 110 Ohio St. 576, 144 N.E. 44, and to have had sufficient grounds upon which to render judgment, *Makranczy, supra*. Where there exists competent and credible evidence supporting findings

and conclusions of a trial court, deference to such findings must be given by the reviewing court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

Decisions and awards of domestic relations courts are usually subject to an "abuse of discretion" standard of review. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

It is axiomatic that an appellate court will not review what has not been properly preserved for appeal. The failure to raise the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue, and it need not be heard for the first time on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630–631; *Abraham v. Natl. City Bank* (1990), 50 Ohio St.3d 175, 553 N.E.2d 619, fn. 1; *State ex rel. Specht v. Oregon City Bd. of Edn.* (1981), 66 Ohio St.2d 178, 182, 20 O.O.3d 191, 194, 420 N.E.2d 1004, 1007.

In the case *sub judice*, appellant asserts, *inter alia*, that the trial court's decision violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution. Appellant first challenges the trial court's application of the best interest standard as set forth in R.C. 3109.04. Specifically, appellant charges that, as it is applied, the best interest standard is unconstitutional on the ground that it discriminates on the basis of gender. As a result of the application of the best interest standard, appellant argues that women are disproportionately designated as custodial caretakers of minor children.

Thus, appellant alleges that she was denied the right to relocate and take advantage of a career opportunity because she is the custodial caretaker of the minor children. Appellant submits that gender considerations rather than the best interest standard influenced the trial court's decision to deny her motion to relocate. Males, as nonresidential parents, according to appellant, are freely permitted to pursue career opportunities regardless of the best interest standard. Therefore, when the issue of relocation is before the trial court, a disparity based on gender exists in the treatment of men and women.

Section I of the Fourteenth Amendment to the United States Constitution reads, in pertinent part, as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the states where they

reside. No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States. * * * "

The Ohio Supreme Court has held that the equal protection guarantee of Section 2, Article I of the Ohio Constitution is essentially identical to that afforded by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Kinney v. Kaiser Aluminum & Chem. Corp.* (1975), 41 Ohio St.2d 120, 123, 322 N.E.2d 880, 882–882. More recently, the Ohio Supreme Court, in *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 595 N.E.2d 862, stated:

" 'Equal protection of the law means the protection of equal laws. It does not preclude class legislation or class action provided there is a reasonable basis for such classification. The prohibition against the denial of equal protection of the laws requires that the law shall have an equality of operation on persons according to their relation. So long as the laws are applicable to all persons under like circumstances and do not subject individuals to an arbitrary exercise of power and operate alike upon all persons similarly situated, it suffices the constitutional prohibition against denial of equal protection of the laws. * * * ' [Citations omitted]. *Dayton v. Keys* (1969), 21 Ohio Misc. 105, 114, 50 O.O.2d 29, 34, 252 N.E.2d 655, 660.

" * * *

"The test used in determining whether a statute is constitutional under the Equal Protection Clause depends upon whether a fundamental interest or suspect class is involved. 'Under the equal protection clause, in the absence of state action impinging on a fundamental interest or involving a suspect class, a rational basis analysis is normally used. Where the traditional rational basis test is used great deference is paid to the state, the only requirement being to show that the differential treatment is rationally related to some legitimate state interest.' [Quoting *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66.] * * * Where a fundamental interest or suspect class is at issue, a stricter test is used * * * and the government will have to demonstrate that a classification created by law is necessary to promote a compelling governmental interest." *Id.*, 64 Ohio St.3d at 288–289, 595 N.E.2d at 866–867.

Classifications based on gender have not been labeled "suspect" but have been subjected to scrutiny less strict than strict scrutiny and more strict than rational relationship scrutiny. Gender-based distinctions must "serve important governmental objectives and must be substantially related to achievement of these

objectives." *Califano v. Webster* (1977), 430 U.S. 313, 317, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360, 364.

I acknowledge the economic ramifications of the gender bias against women.[2] No segment of this society is exempt from the influence of gender bias and, in this regard, the judiciary is no exception.[3] Notwithstanding the aforementioned, I think it is necessary to distinguish gender bias relative to its impact on judicial administration and the substantive rights of litigants from governmental provisions which set forth impermissible gender-biased classifications.

Here, I believe appellant failed to set forth evidence in the trial court in support of her contention relative to each of these issues. Appellant certainly raised thought-provoking questions concerning the manner in which gender bias influences custody decisions; yet, appellant's argument and appeal ultimately failed because she did not address the best interest of the minor children as required by R.C. 3109.04, which was the paramount concern. An allegation that the trial court deviated from the best interest standard, without evidence in support of this allegation, is woefully inadequate. Similarly, an allegation that a provision unconstitutionally discriminates against women as a result of its application, in the absence of evidence, is insufficient.

The focus of the underlying litigation is whether appellant's motion to relocate the minor children is in the children's best interests. Appellant argues that this is the central issue on appeal. Thus, appellant's burden of evidence with respect to her motion to relocate the minor children is to substantiate that the new residency and relocation is in the best interests of the children. See *Hauck v. Hauck* (Mar. 31, 1983), Cuyahoga App. No. 44908, unreported, 1983 WL 5881.

Appellant failed to submit evidence in support of her proposition of law that the best interest standard, as set forth in R.C. 3109.04, as applied by the trial court, violated the Equal Protection Clause. Similarly, appellant did not proffer evidence in support of her allegation that gender bias, and not the best interest standard, was the governing factor that influenced the trial court's decision to deny her motion to relocate the minor children. More important, appellant did not demonstrate that the relocation is in the best interest of the minor children.

Assuming that appellant offered evidence in support of her arguments, she did not properly preserve her arguments for appellate review, as correctly noted by

---

2. Nancy F. Rytina, Occupational Segregation and Earnings Differences by Sex (Jan. 1981), 104 Monthly Labor Rev., fn. 1.

3. Judith Resnik, Gender Bias: From Classes to Courts (1993), 45 Stan.L.Rev. 2195; Lynn F. Schafran, Overwhelming Evidence: Reports on Gender Bias in the Courts (Feb. 1994), Trial, at 25.

Judge Karpinski's opinion. This oversight is fatal to appellant's appeal, regardless of the interesting issues raised by her.

In this appeal, appellant also charges that the trial court, in denying her motion to relocate, violated her right to travel interstate, which is a fundamental constitutional freedom guaranteed by the Fourteenth Amendment to the United States Constitution and Section 1, Article I of the Ohio Constitution. *Shapiro v. Thompson* (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.

In ruling on a motion to relocate pursuant to R.C. 3109.04, the trial court cannot make a modification unless that modification serves the best interest of the children.

The record is devoid of evidence demonstrating that the trial court violated appellant's constitutional right to travel interstate when it denied her motion to relocate the minor children. I have reviewed the case authority upon which appellant relies to support her proposition of law. *Smeltzer v. Smeltzer* (Nov. 24, 1993), Columbiana App. No. 92–C–50, unreported, 1993 WL 488235. Appellant's case is readily distinguishable from *Smeltzer.* In the case *sub judice,* appellant was not required to comply with a court-imposed residency restriction as a condition of custody. Herein, the parties mutually agreed upon a shared parenting plan, stipulating that the children would remain in the Greater Cleveland area. The undisputed evidence before the trial court and the referee indicated that the relocation was not in the best interest of the minor children. Thus, there is no record to indicate that the trial court imposed a restriction on appellant's right to travel interstate.

Given the facts of this case, the trial court did not violate appellant's constitutional rights when it denied her motion to relocate the minor children on the ground that the relocation did not serve the best interest of the minor children.

Accordingly, I concur with the affirmance of the trial court's ruling.