OPINION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Ottawa County Court of Common Pleas, Juvenile Division, which denied appellant's motion to modify custody of his eight-year old daughter, Sydney J. As a result, Sydney continued to live with appellee, her mother Sophia T., in Kansas during the school year, but visited appellant, her father Bruce J., in Ohio during the summer.
Appellant appeals and sets forth the following assignments of error:
 "1. The trial court failed to consider the child's loss of contact with the father and his family.
 "2. The trial court failed to consider the mental health of the parties.
 "3. The trial court failed to properly address the statutory factors when it failed to address the denial of visitation by Sophie.
 "4. The trial court failed to properly consider the statutory factor [sic].
 "5. The mother failed to meet her burden of proof that it was in the child's best interest to relocate."
The initial history of this case was set forth in our decision in In re: Sydney J. (Jan. 22, 1999), Ottawa App. No. OT-98-023, unreported. To summarize, the parties' child Sydney was born on March 7, 1991 when the parties were cohabitating, but not married. On April 17, 1996, a consent judgment entry designated appellee, Sophia T., as the residential parent and legal custodian of Sydney. Appellant, Bruce J., was granted visitation as the parties agreed, but at a minimum, in accordance with the court's standard companionship schedule with an additional week each summer.
On July 16, 1997, appellant filed a motion seeking an exparte temporary restraining order to prevent appellee from moving to Kansas with Sydney and designating him as the residential parent. In the alternative, appellant requested a shared parenting plan or modified visitation schedule. Appellant also requested a contempt finding concerning appellee claiming Sydney as a dependent for tax purposes and for denying two weekend visitations.
After a hearing on August 4, 1997, the trial court denied appellant's motion for a temporary restraining order and instituted a long distance travel companionship schedule while Sydney lived in Kansas. Although the court set a hearing date of September 2, 1999 to hear the remaining matters presented in appellant's motion, that date was continued to allow a guardian adlitem to investigate and prepare a report. That report was submitted November 5, 1997, and recommended a change of custody of Sydney by designating appellant as the residential parent. On March 4, 1998, appellee filed a motion for shared parenting. Under the proposed shared parenting plan, appellee would have custody of Sydney during the school year, while appellant would care for Sydney during the summer and visitation would be in accordance with the court's long distance companionship schedule. The trial court granted appellee's request that an attorney be appointed for Sydney because the child's wishes purportedly conflicted with the guardian ad litem's recommendation.
On March 31, 1998, the trial court conducted a hearing on the balance of appellant's July 16, 1997 motion. The trial court denied appellant's motion for change of custody on May 21, 1998. It found that because the custodial parent's relocation was not a sufficient change of circumstances to modify custody under R.C. 3109.04(E)(1)(a), it was not necessary to determine whether modifying custody would be in the child's best interest.
On January 22, 1999, we reversed the decision of the trial court because it abused its discretion in determining that the move to Kansas was not a change of circumstances. The case was remanded with directions that the trial court determine whether a change of custody was in the best interest of the child.
On remand, the trial court entered findings of facts and conclusions of law without conducting additional hearings. The evidence at the hearings conducted on August 4, 1997 and March 31, 1998 showed that appellee had moved from Ohio to Wichita, Kansas on August 4, 1997 for a management training program with her employer, which was originally expected to last approximately six months. Appellee testified at the first hearing that she expected to return to the Ohio area after training.
Subsequently, appellee and Sydney moved to Hutchinson, Kansas. At the second hearing, appellee testified that she had signed a two-year contract to work for her employer in Hutchinson, which was approximately an hour away from Wichita. Sydney was enrolled in first-grade in Hutchinson. Appellee did not file a notice of intent to move with the court. However, appellee did telephone appellant the day she moved to Hutchinson and left word with appellant's wife that she would contact them when they were settled. When appellant telephoned Sydney several days later, he secured the new telephone number from the telephone company, and was able to contact appellee and Sydney.
By the second hearing in March 1998, appellee had remarried and was expecting her third child. Appellant was able to see Sydney for five days when appellee and Sydney returned to Ohio in September and October 1997.
Appellant's evidence emphasized that the move caused Sydney to be separated from two half sisters[1], as well as his large family, in Ohio. Appellant underscored a history of difficulty in arranging visitation before appellee moved to Kansas. Appellant explained he wanted Sydney to live with him in Ohio during the school year, and spend summers with her mother in Kansas, as had been arranged for one of Sydney's half-sisters. Appellant testified:
 "I want her to be here with me. I can offer her more. Like I said, a more stable environment, be around her family. She was out there — I mean, there is [sic] conversations where she misses everybody in town here."
On remand, the trial court determined that appellee's move to Kansas was a change of circumstances under R.C.3109.04(E)(1)(a). The trial court found that relocation was characteristic of a modern, mobile society and no evidence showed how a child's normal reaction to relocation had adversely affected Sydney. The court suggested that the child's reduced interactions with her half-sisters in Ohio and appellant's extended family were a normal consequence of relocation of one parent.
The court observed that when Sydney was interviewed in his chambers, her wishes regarding which parent she preferred to live with were uncertain. Similarly, the testimony at the hearing revealed Sydney had given conflicting statements about which parent she wished to live with.
To modify a prior child custody order, R.C.3109.04(E)(1)(a)(iii) provides:
 "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, [or] his residential parent * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and * * * the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
Consequently, appellant had to establish three elements in order for the trial court to make appellant the residential parent. First, there must be a change of circumstances. In order to demonstrate a change in circumstances, the movant need not show that the change is detrimental or even substantial Steven M. v.Robin D. (Mar. 12, 1999), Lucas App. No. L-98-1148, unreported, quoting Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418. Second, the modification of custody must be in the child's best interests. To determine the best interest of a child, the trial court must consider any applicable factors listed in R.C.3109.04(F)(1)(a)-(j). Secondcost v. Secondcost (Feb. 6, 1998), Fulton App. No. F-97-001, unreported. These factors include the parents' wishes, how the parties interact, the child's adjustment to home, school, and community, the mental and physical health of the family, and support and visitation issues. Id. Finally, any harm to the child from moving in with the father must be outweighed by the advantages of such a move. R.C. 3109.04(E)(1)(a)(iii);Rathburn v. Rathburn (May 12, 1999), Mahoning App. No. 97 CA 169, unreported.
A trial court's custody decision will not be reversed absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71,74. To apply that standard, an appellate court must determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable. Id. at 73-74; Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219 (citations omitted). Consequently, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Davis v. Flickinger,77 Ohio St. 3d at 418, quoting Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus. The trial court is in a superior position to evaluate credibility and the relevant factors. Miller,37 Ohio St. 3d at 74.
 I.
Appellant's first four assignments of error concern the trial court's determination that modification of custody was not in Sydney's best interest. However, appellant's first four assignments of error are presented in language claiming the trial court did not consider four of the statutory criteria set forth in R.C. 3104.04(F)(1)(a) through (j) to determine the best interests of Sydney. Those factors are: the child's interaction with parents, siblings, and other persons who may significantly affect the child's best interest under R.C. 3109.04(F)(1)(c); the mental and physical health of all persons involved under R.C.3109.04(F)(1)(e); the parent most likely to honor and facilitate visitation and companionship rights under R.C. 3109.04(F)(1)(f); and whether either parent has established a residence outside this state under R.C. 3109.04(F)(1)(j).
The trial court's judgment entry, including findings of fact and conclusions of law, explicitly discussed each of these factors. For example, in evaluating Sydney's reduced contact with her family in Ohio, the trial court determined:
 "Under the Court's Long Distance Travel Companionship Schedule, there are ample opportunities for Sydney to spend time with [appellant] and his family. While Sydney may have lost some contacts with [appellant's] family during the school year, [appellant] would be able to have Sydney for a longer period of time during summers and other holidays."
However, a review of appellant's first four assignments of error reveals that despite his terminology, appellant is essentially claiming that the trial court abused its discretion by not finding, based upon those factors, that it would be in Sydney's best interest to modify custody. Appellee has not filed a brief or appeared in this appeal. In the interests of justice, we will address appellant's first four assignments of error relating to Sydney's best interest together.
First, appellant suggests that because Sydney's contact with her father, half-siblings, and other family in Ohio were reduced after moving to Kansas, the trial court should have determined that it was in Sydney's best interest to designate appellant as the residential parent. The evidence showed that such contact had been reduced in the seven months after Sydney and her mother moved to Kansas. The evidence also showed that Sydney maintained telephone contact with that family. Further, the trial court determined that under its long distance companionship schedule, Sydney would spend longer periods of time with that family during summers and other holidays in Ohio despite the reduced contact during the school year. Based on this evidence, together with other factors the trial court was obligated to consider, the trial court did not abuse its discretion by determining that, despite the reduced interaction with family in Ohio, it was in Sydney's best interests to remain with her mother in Kansas.
Next, appellant contends that evidence regarding appellee's mental and physical health warranted a determination that a change of custody was in order. However, that evidence was limited. Appellee acknowledged she suffered from diabetes and was pregnant at the time of the March 31, 1998 hearing. While there were references to prior mental health problems during high school and an earlier divorce in the guardian ad litem's report, the trial court correctly concluded that no evidence showed that the mother had suffered mental health issues since the time of the original decree which impaired her care of Sydney.
The guardian ad litem had worked as a clinical psychologist and social worker before becoming an attorney. He reported appellee had made spontaneous statements during a telephone conversation that the weather was hot in Kansas and she didn't want either herself or Sydney to make friends if they would leave. The guardian concluded that "this unusual set of statements * * * obviously indicates paranoid ideation." However, the guardian did not report or testify in the capacity of a psychological expert. On cross-examination, the guardian conceded that although he checked mother's criminal record, he did not check the father's criminal record. Both had convictions for assault and domestic violence arising from their relationship. It was up to the trial court to determine the credibility of the guardian ad litem and the weight which should be accorded his report.
Other than the comments by the guardian, which the trial court was free to disregard, the trial court had no evidence before it regarding the mother's mental health since the original child custody order. There was no evidence that any physical or mental health issues impacted mother's care of Sydney. Consequently, the trial court did not abuse its discretion by determining that it was in Sydney's best interests to remain with her mother in Kansas despite mother's past mental health and current physical health issues.
In his third contention, appellant argues that because mother had a history denying him visitation, the trial court should have determined that it was in the child's best interest to designate him as residential parent. Appellant testified that even while in Ohio, mother would often reschedule visits that conflicted with his work and visits. He emphasized that mother did not file a timely notice of intent to relocate to Kansas initially, although he conceded he was informally aware of the possible move to Kansas. He testified that she did not notify him, formally or informally, of her change of residence from Wichita to Hutchinson, Kansas. He acknowledged he was able to contact Sydney several days after the move by telephone.
Appellant revealed there had been a great deal of confusion when Sydney visited for spring break, although exactly when that occurred is not clear in the record. According to appellant, he was to drive to Kansas to pick up Sydney for a week on a Sunday. However, because of the change of schools arising from the move from Wichita to Hutchinson, the new school's spring break was during a different week. Appellee elected to drive Sydney to Ohio. Although they were to arrive on a Sunday, they did not arrive until late Tuesday. Appellee then indicated she had to return to Kansas on Saturday. Appellee did not return to Kansas on Saturday. Appellee claimed inclement weather delayed her departure until Monday. Appellee did not notify appellant that Sydney was still in town to allow him to extend his visit.
As a result, as the trial court noted, during the seven months since Sydney moved to Kansas in August 1997, until the court hearing in March 1998, appellant was able to see Sydney for a total of five days in September and October of 1997, plus the abbreviated spring break visit. Because the trial court must examine several factors to determine the best interests of a child in custody matters, not just cooperation and facilitation of visitation, we cannot substitute our judgment or say the trial court abused its discretion in these particular circumstances.
The seven month period of time involved to assess the success of visitation, since relocating to Kansas, was relatively short while litigation was pending in Ohio and Sydney and her mother moved twice. The trial court also considered that appellee had provided suitable housing and Sydney had adjusted to, and performed well in, her new schools. Further, the trial court did not ignore that appellee had not promoted visitation between Sydney and appellant. It specifically required her to "make a diligent and good faith effort in facilitating [appellant's] right to visitation."
Sidney's visitation with appellant since her move to Kansas changed her circumstances, and another trial court might have reached an opposite conclusion in resolving the conflicts in testimony. However, to determine abuse of discretion, we must recall that the intent of R.C. 3104.09(E) is to:
 "spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." Flickinger, 77 Ohio St.3d at 417, quoting Wyss v. Wyss (1982), 3 Ohio App.3d 412, 415.
The trial court concluded:
"[T]he harm likely to be caused by a change of environment, i.e., the loss of a close relationship with her mother and the disruption to her education in Kansas, are not outweighed by the advantages of the change of environment to the child, i.e., more contacts with [appellant's] extended family and her two siblings, in accordance with R.C. Section 3109.04(E)(1)(a)(iii)."
When balancing all the relevant factors needed to determine whether it was in Sydney's best interest to modify custody, we cannot conclude that the trial court failed to consider any pertinent factor or abused its discretion denying appellant's motion. Accordingly, appellant's first, second, third, and fourth assignments of error are found not well-taken.
 II.
In his fifth and final assignment of error, contends that the mother did not meet her burden of proof to show that it was in Sydney's best interest to relocate. In support, appellant cites Rozborski v. Rozborski (1996), 116 Ohio App.3d 29. That case, however, refers to the burden of proof applied when a parent files a motion to relocate when the parents had stipulated in earlier custody agreements that neither parent would relocate the children without the other's permission or a court order.
The motions before the court were filed by appellant, the father, not appellee. It is rudimentary that the moving party bears the burden of proof. The burden of proof is upon the parent seeking modification of a decree awarding custody of a child to the other parent to establish that such a change is in the child's best interest. See Jacobs v. Jacobs (1995), 102 Ohio App.3d 568,576-577, quoting Bodine v. Bodine (1988), 38 Ohio App.3d 173,175.
To the extent appellant's argument may be construed to suggest appellee did not rebut his case, the transcripts show that appellee's evidence created questions of fact. Appellee and her witness explained the move to Kansas, described how Sydney had adapted to Kansas and her schools, and offered a different explanation of the problematic visitation history. Additionally, the trial court interviewed Sydney in chambers and evaluated the report and testimony of the guardian ad litem, independently of either party's presentation. The attorney appointed to represent Sydney advocated that the child wished to live in Kansas with her mother.
The weight to be accorded evidence and resolution of conflicting testimony is to be determined solely by the trier of fact. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Accordingly, appellant's fifth assignment of error is found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED
 Peter M. Handwork, P.J., Melvin L. Resnick, J.,Richard W. Knepper, J., concur.
[1] Appellee was married to Dennis T. before her relationship with appellant. Appellee's daughter, and Sydney's older half-sister, Samantha, was born during that marriage. After severing his relationship with appellee, appellant married Michelle J. Appellant's daughter, and Sydney's younger half-sister, Haley, was born during that marriage.