OPINION
John F. Wooldridge, defendant-appellant, appeals the September 22, 2000 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, wherein the court overruled appellant's objections to the June 29, 2000 amended magistrate's decision.
Appellant and Jualeah Johnson-Wooldridge, plaintiff-appellee, were married on October 3, 1987, and divorced on March 17, 1993. They are the parents of two children, Nakita, who was thirteen-years-old at the time of trial, and John, II (nicknamed "Storm"), who was eight-years-old at the time of trial and has Down Syndrome. At the time of the divorce, both parties lived in Columbus, Ohio. Appellant is an investigator for the Ohio Civil Rights Commission, and appellee is a nurse. Pursuant to the agreed entry decree of divorce, appellee was granted custody of the children and appellant was granted visitation and ordered to pay $510 per month in child support. In January 1996, appellant filed a motion to modify parental rights and the parties entered into an agreed shared-parenting plan in July 1996.
On August 16, 1999, appellee filed a relocation notice with the trial court and moved to Charlotte, North Carolina, with the children. On August 19, 1999, appellant filed a motion seeking an ex parte temporary custody order and a motion to reallocate parental rights and responsibilities as a result of appellee moving to North Carolina. That same day, the trial court issued an entry granting appellant emergency temporary custody of the children. Thereafter, appellant traveled to North Carolina and, under the guise he was going to spend the weekend with the children, returned to Ohio with the children. Upon his return, appellant notified appellee that he had obtained the emergency order and the children were with him in Ohio. Since that time, the children have resided with appellant and appellee has exercised visitation with the children in Ohio.
On January 10, 2000, the magistrate held a hearing on appellant's motion to reallocate parental rights and responsibilities. On March 9, 2000, the magistrate filed a decision modifying the shared-parenting plan and ordering the children to remain with appellant until the end of the school year, at which time appellee would be designated residential parent for school purposes and appellant would be granted specific companionship rights. On March 16, 2000, appellant requested findings of fact and conclusions of law with regard to the magistrate's decision. On June 29, 2000, the magistrate filed an amended decision, which included findings of fact and conclusions of law. The trial court adopted the magistrate's decision that same day.
On July 13, 2000, appellant filed preliminary objections. On August 29, 2000, appellant filed final objections and a hearing was held on those objections the same day. Although it is unclear from the record, it appears appellant and/or the guardian ad litem ("GAL") orally moved for the submission of additional evidence at that hearing, which was apparently denied. On August 31, 2000, the GAL submitted a written motion to submit the additional evidence. On September 22, 2000, the trial court entered judgment overruling appellant's objections and ostensibly denying the written motion to submit additional evidence. Appellant appealed the trial court's judgment, and we granted appellant's motion to stay the trial court's determination pending this appeal. Appellant asserts the following five assignments of error:
 I. The trial court erred when it refused to allow the children's guardian and the father to submit critical newly discovered evidence after the trial.
 II. The trial court erred when it made inaccurate findings regarding critical facts.
 III. The trial court erred when it failed to place the burden of proof on the mother to establish that it would be in the best interest of the children to move the children to North Carolina.
 IV. The trial court erred when it failed to presume that the father, as the non-moving parent, should be granted primary possession of the children.
 V. The trial court erred when it failed to consider, or failed to properly consider, critical factors regarding the best interest of the children.
Appellant argues in his first assignment of error that the trial court erred in refusing to allow the children's GAL to submit newly discovered evidence obtained after the magistrate's hearing but before final judgment on appellant's objections was rendered. The additional evidence was in the form of certain statistics and documents printed by appellant from the internet indicating the school Nakita would have to attend in North Carolina, due to appellee moving to a different location to live with her boyfriend, was categorized as a "low-performing school" and in a "state of academic emergency."
Civ.R. 53(E)(4)(b) provides, as follows:
 * * * The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
As this court stated in Ferguson v. Ferguson (Mar. 21, 2000), Franklin App. No. 99AP-518, unreported, the trial court has the discretion to determine whether or not it will hear additional evidence. See, also, Brooks v. Brooks (Dec. 14, 1995), Franklin App. No. 95APF03-381, unreported. However, a plain reading of the second sentence of Civ.R. 53(E)(4)(b) limits this discretion and requires acceptance of the new evidence if the objecting party demonstrates with reasonable diligence that it could not have produced the new evidence for the magistrate's consideration.
Thus, we must first determine if appellant sufficiently demonstrated the additional evidence could not have been presented at the magistrate's hearing with reasonable diligence, as to require the trial court's consideration of the new evidence under Civ.R. 53(E)(4)(b). The crux of this analysis is whether appellant and the GAL were put on notice of the change in school districts at the time of the magistrate's hearing to reasonably expect them to present the evidence at that time. Appellant argues in his brief that he did not learn of appellee's change of address from John Paine Circle to Aaronda Court until June 2000, and thus, he could not have produced the information on the new school district for the magistrate's consideration. The record reveals that a June 29, 2000 order terminating withholding was the first pleading to indicate appellee's new address. Thus, this supports appellant's contention that he could not have been expected to produce the evidence at the January 2000 hearing when he was not aware appellee had moved to a new school district until June 2000.
Appellee's testimony at trial on this issue is also somewhat confusing. When appellee was initially asked her address at the beginning of her direct examination, she replied she was still living in her apartment on John Paine Circle. The record reveals she was also using this address for service at the time of the hearing. Also during her testimony at trial, appellee specifically stated she lived alone with her two children in the apartment on John Paine Circle. Therefore, from this testimony, appellant and the GAL could reasonably assume a change in school districts was not an issue at the time of the magistrate's hearing.
However, appellee's subsequent testimony revealed she was not actually living at her apartment at the time of the hearing. On this subject, appellant's attorney elicited the following from appellee at the hearing before the magistrate:
A. I let my younger cousin live with me.
* * *
 Q. (By Ms. Miller): Was anyone else also staying in that apartment?
 A. I wasn't, I wasn't there. The only time I stayed there was when I had my kids, and I was by myself. So I wasn't staying in the apartment, my cousin was staying there. * * *
Q. Where were you staying?
 A. I had my apartment, but I didn't sleep there. I was staying over at Orlando's.
Further, appellant's counsel also asked appellee:
 Q. Do you have a serious relationship with [Orlando] at this point?
A. Yes.
Q. What are your future plans with respect to Orlando?
A. Well, we would like to get married.
 Q. Does he intend to remain in North Carolina, in Charlotte?
A. As far as I know.
After hearing this testimony, neither appellant nor the GAL pursued this issue in depth with appellee. The GAL did cross-examine appellee immediately after she gave the above testimony but the only information gleaned from that exchange was that appellee's rental agreement expired in July 2000, and she was planning to marry Orlando at that same time.
A review of appellee's testimony at the magistrate's hearing shows that neither appellant nor the GAL could have construed appellee's revelations of her relationship status with Orlando, her plans to marry him at some point in the future, and the expiration of her lease in July 2000, as an impetus to inquire whether she planned to relocate the children to a new school district. This had never been revealed prior to this questioning. Additionally, appellee did not give any indication during her testimony that Orlando was living in a different school district than she was at the time. We do not believe the circumstances and appellee's testimony gave any reasonable cause to pursue the issue at the time.
Further, even if appellant or the GAL would have questioned appellee and could have established with certainty to which school district appellee would relocate in six months, it is doubtful any of the parties would have been able to present any evidence at the time of the magistrate's hearing regarding the new school district. Obviously, neither party was prepared to present an argument on a hypothetical school district change that appellee never divulged before. Even more clearly, appellant and the GAL could not have been expected to present the specific evidentiary material relating to the academic performance of the new school district at that time. Of course, there is the possibility that the GAL or appellant could have moved for a continuance to investigate the new school district had appellee testified she planned to permanently move from her apartment and reside with Orlando in a new school district, but it is impossible to speculate whether such motion would have been granted.
In sum, given the totality of the circumstances, we cannot say appellant or the GAL could have with reasonable diligence discovered the information relating to the new school district to present to the magistrate. Therefore, we find Civ.R. 53(E)(4)(b) required the trial court to consider the additional evidence in determining appellant's objections to the magistrate's decision.
However, appellee argues that even if we find Civ.R. 53(E)(4)(b) required the admittance of the newly discovered evidence, the evidence could not be admitted for several other reasons. Appellee first contends the documents printed from the internet website of the North Carolina State Board of Education were unauthenticated. Because we have no record of the hearing before the trial court on appellant's motion, we do not know whether the trial court considered this issue. Appellant claims the trial court did not reach this issue and that appellee never raised it before the court. Appellee does not assert anything to the contrary. However, considering the fact that this is a custody matter, and to prevent further delay, we will address the admissibility of the information taken from the internet, which is a part of the record before this court.
Evid.R. 901 provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Appellant could have authenticated the documents himself via an affidavit or through his own testimony if the trial court would have permitted him to submit the additional evidence. See Kassouf v. White (Mar. 2, 2000), Cuyahoga App. No. 75446, unreported (hotel pricing information printed off the internet is not hearsay when authenticated with an affidavit attesting that the affiant had retrieved the pricing materials from the hotel's webpage). Therefore, the documents were not inadmissible based upon lack of authentication.
Appellee also contends the documents constituted inadmissible hearsay. The documents in question are from the "1999-2000 ABCs of Public Education Report Vol. 1." The report indicates the "ABCs of Public Education" system was developed and implemented by the State Board of Education in response to a mandate by the North Carolina General Assembly. The statistics for the "ABC's of Public Education Report" are compiled and prepared by the North Carolina Department of Public Instruction. After the annual report is prepared, the State Board of Education reports the findings to the public.
Evid.R. 803(8) provides that records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth either the activities of the office or agency or matters observed pursuant to duty imposed by law as to which matters there was a duty to report, are not excluded by the hearsay rule unless the source of information or other circumstances indicate lack of trustworthiness. The North Carolina Department of Public Instruction is analogous to the Ohio Department of Education in that they both are the administrative units of their respective state boards of education and superintendents of public instruction. See R.C. 3301.13 and North Carolina General Statutes Annotated ("N.C.G.S.A.") Chapter 115C-21. There can be little dispute that state boards of education and superintendents of public instruction are public agencies. See Hall v. Bd. of Edn. (1972), 32 Ohio App.2d 297,331; see, also, R.C. 3301.11; N.C.G.S.A. 115C-19. Thus, it is apparent that the "ABCs of Public Education Report" is comprised of records, statements, and data compilations of a public agency. Further, as required by Evid.R. 803(8), the North Carolina Department of Public Instruction was under a duty to report such matters at the direction of the State Board of Education and the General Assembly. Finally, we see no indication of untrustworthiness, and appellee points to none. Therefore, the report does not constitute inadmissible hearsay.
We stress that both parents in this case were obviously strong candidates to be named residential parent of the children. The magistrate found both parents loving, caring, and nurturing toward both children, and the record is replete with examples of both parents' exceptional parenting skills and relationship with the children. Because of these circumstances, we cannot disregard the possibility that the magistrate or trial court could have found this new evidence vital and weighed it sufficiently in either party's favor as to possibly affect the ultimate outcome. In addition, there was considerable testimony and evidence presented at the magistrate's hearing regarding the schools the children would attend in North Carolina and Columbus and the children's respective educational needs. Appellee testified she visited Charlotte before she moved there in order to evaluate the schools for the children. Appellant testified that he investigated and researched the schools in Columbus and Westerville to determine which school would better suit the children. The parties also testified they discussed the children's educational requirements frequently with each other. Thus, the record demonstrates both parties considered the schools the children would attend to be an important issue.
Therefore, under the specific facts of this case, we find the trial court should have considered appellant's new evidence. The trial court erred in failing to consider appellant's evidence regarding the new school system the children would attend in North Carolina. Appellant's first assignment of error is sustained.
Appellant argues in his third assignment of error that the trial court erred when it failed to place the burden of proof on appellee to establish it would be in the best interest of the children to move them to North Carolina. It has been held that where a divorce decree or shared-parenting plan expressly or impliedly prohibits the removal of the parties' children from the jurisdiction, the burden is upon the parent requesting the relocation to demonstrate that the decree should be modified to permit removal. See Hauck v. Hauck (Mar. 31, 1983), Cuyahoga App. No. 44908, unreported. Thus, where visitation rights are awarded in the initial decree, the removal of a child might impliedly violate those rights. Id. On the other hand, where no such provision is made, the burden is upon the parent not seeking relocation to prove that a modification of the decree to prohibit removal is required. Id. Stated otherwise, the burden of proof is upon the party seeking modification. Id., citing Schwalenberg v. Schwalenberg (1940), 65 Ohio App. 217. By its terms, R.C. 3109.04(E)(1)(a) also places the burden of proof upon the party wishing to modify the shared-parenting plan. See R.C.3109.04(E)(1)(a); Zimmer v. Zimmer (Feb. 27, 2001), Franklin. App. No. 00AP-383, unreported; In re Neale (Feb. 6, 1998), Trumbull App. No. 97-T-0084, unreported.
Appellant claims that the shared-parenting plan impliedly prohibits either parent from moving the children's residence to a location that would not allow both parents to be fully involved with the children. A shared-parenting plan is a contract. See Ellsworth v. Ellsworth (Dec. 24, 1998), Hamilton App. No. C-970916, unreported; Boldt v. Boldt (Dec. 9, 1998), Summit App. No. 18736, unreported. Thus, in interpreting and enforcing provisions of a shared-parenting plan, a court must follow the rules of contract construction and interpret the shared-parenting plan "so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." Skivolocki v. East Ohio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. If the terms in a shared-parenting plan are unambiguous, then the words must be given their plain, ordinary, and common meaning. See Forstner v. Forstner (1990), 68 Ohio App.3d 367. Further, because the construction of written contracts is a matter of law, this court must make a de novo review of the meaning of the shared-parenting plan. See Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
After analyzing the language of the shared-parenting plan in detail, we do not find the provisions of the plan ambiguous on the relocation issue. The plain language of the plan does not prohibit relocation of either parent or child. Appellant cites several portions of the plan to argue a prohibition of such a relocation, including: (1) the right of children "to a continuing relationship with both parents" and "to be able to experience regular and consistent contact with both parents"; (2) the right of the parents to participate in major decisions concerning the health, morals, and economic environment of the children, to be present with the children for health examinations, and to attend parent/teacher conferences and other school activities; and (3) the prohibition against either parent doing anything to estrange the children from the other parent. However, while these portions of the shared-parenting plan indicate the parents must cooperate with one another, they cannot be construed to provide that the parties contemplated that neither party would be permitted to relocate when read in conjunction with the language of the plan regarding relocation.
The direct language of the shared-parenting plan indicates the parties, indeed, considered the possibility of relocation and provided a specific plan for such an event. Section II(L) of the plan stated that the parties had the "right to receive notice of the other parent's intention to relocate," thereby specifically allowing for relocation of either parent. Further, Section IV(D)(11) provides:
 Change of Residence from Franklin County. Neither parent shall permanently change the residence of the children from Franklin or a continguous [sic] county during the school year. (Emphasis added.)
Thus, by specifically prohibiting relocation of the children's residence outside Franklin county or a contiguous county during the school year, Section IV(D)(11) would seem to permit, by omission, a relocation of the children's residence during the summer break months, as occurred in the present case. In addition, Section VIII(A) provides the standard relocation notice pursuant to R.C. 3109.051(G), which requires only that the party desiring to relocate file a notice with the court. The section allows either parent to then file a motion to determine whether it is in the best interest of the children to revise the visitation or parenting schedule for the children. In the present case, appellee complied with Section VIII(A) and filed a notice of her intent to relocate.
In support of his contention that appellee had the burden of proof, appellant cites several cases, including Rozborski v. Rozborski (1996),116 Ohio App.3d 29; Zimmer, supra; Lockom v. Lockom (Aug. 18, 2000), Wood App. No. WD-99-053, unreported; and Powe v. Powe (1987), 38 Ohio Misc.2d 5. However, in all four cases, the parents had specifically stipulated in earlier custody agreements that neither parent would relocate the children without the other's permission or a court order. There is no specific restriction in the present case, so the holdings in these cases are not helpful in this respect.
In sum, we find the plain language and meaning of the shared-parenting plan in the present case does not include an express or implied prohibition against relocating the children to another state, and, therefore, appellee did not have the burden to establish that relocation was in the best interest of the children. Because appellee filed no motions in the present case, and the only motion before the magistrate was appellant's motion to modify parental rights and responsibilities, the burden of proof remained upon appellant to establish that a change was in the children's best interest. See In re Sydney J. (Sept. 30, 1999), Ottawa App. No. OT-99-026, unreported (where no previous custody agreements exist stipulating that neither parent could relocate the children without the other's permission or court order, the burden of proof remains with the party filing a motion to modify parental rights); see, also, Schmidt v. Schmidt (1982), 7 Ohio App.3d 175, 177 (the fact that the children were taken out of state does not shift the burden of proof, regardless of whether the removal was for valid reasons); Dow v. Dow (Mar. 5, 1987), Franklin App. No. 86AP-588, unreported, citing Schmidt. We add, however, that were it not for the burdens specifically delineated by statute and prior case law, as well as the specific language in the parties' shared-parenting plan in the present case, we would be inclined to analyze the apparent fairness and logic in placing the burden on a relocating parent when parties are operating under a liberal shared-parenting plan. Notwithstanding, for the foregoing reasons, appellant's third assignment of error is overruled.
Appellant argues in his fourth assignment of error that the trial court erred in failing to presume that he, as the nonmoving parent, should be granted primary custody of the children. Appellant cites a bevy of Ohio Supreme Court cases, reported and unreported appellate cases, Ohio Revised Code sections, and public policy arguments for the assertion that Ohio law favors both parents' involvement in their children's lives, maintenance of a close and ongoing relationship between the children and both parents, and liberal shared-parenting plans where possible. It is true that several Ohio cases and statutes have stated support for the participation of both parents in the raising of their children whenever such is in the best interests of the children. However, appellant wishes this court to recognize an automatic presumption that when one parent involved in a shared-parenting plan moves to a different state, the nonmoving parent should receive primary custody of the children. We decline to construct such a presumption.
Appellant has cited no case law from this state or others that has held such a presumption exists or should exist. To create such a presumption would automatically subordinate the best interests of the children to a second-tier consideration. Whether either parent has or is planning to establish a residence outside the state has already been deemed a factor in determining the best interests of the children by the Ohio legislature; however, the legislature has found it to be but one of ten specifically enumerated factors in R.C. 3109.04(F)(1) that must be considered together. The Ohio legislature has also found geographic proximity to be but one of five factors to be considered in determining whether shared-parenting would be in the children's best interest pursuant to R.C. 3109.04(F)(2). Further, as appellee points out, this court has already found, under circumstances more egregious than in the present case, that a parent's surreptitious relocation to another state with a child is merely one factor for a court to consider in making a custody determination. See Eichenberger v. Eichenberger (Oct. 24, 1995), Franklin App. No. 95APF04-456, unreported. As the court in Hauck, supra, has already recognized, "[c]ertainly visitation rights may be exercised even where the child is removed from the jurisdiction." Therefore, we decline to adopt the position that when one parent moves to another state, a presumption should automatically arise that the nonmoving parent should be granted primary custody. Appellant's fourth assignment of error is overruled.
Because our resolution of the first assignment of error necessitates remand for consideration of the new evidence and its impact on the magistrate's and trial court's previous determination, appellant's second and fifth assignments of error are rendered moot, and we decline to address them. See App.R. 12(A)(1)(c).
Accordingly, we sustain appellant's first assignment of error, overrule his third and fourth assignments of error, and render his second and fifth assignments of error moot. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part, and this case is remanded to that court for consideration of the evidence pertaining to the new school district in North Carolina. The trial court may, in its discretion, hold a hearing regarding the issues raised by the new evidence or allow the parties to file briefs presenting their respective positions.
Judgment affirmed in part and reversed in part; case remanded.
 _________________ BROWN, J.
BRYANT, P.J., and BOWMAN, J., concur.